UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ANITA S. CHARLES, et al., )<br>)<br>      Plaintiffs )<br>)<br>v.                                              )<br>)<br>RON COTE, et al., )<br>)<br>      Defendants ) | Docket No. 06-74-P-C |

### RECOMMENDED DECISION ON MOTIONS TO DISMISS

Defendants Sanford J. Pierce, Michael Duffy and the Windham School Department (the "school defendants") and Ron Cote move to dismiss the federal claims asserted by the plaintiffs in this action and ask this court to decline to exercise jurisdiction over the plaintiffs' state-law claims. Motion to Dismiss and Incorporated Memorandum of Law of Defendants Sanford J. Prince, Michael Duffy and Windham School Department ("School Motion") (Docket No. 4) at 1; Defendant Ron Cote's Motion to Dismiss, etc. ("Cote Motion") (Docket No. 7) at 1. After these motions were filed, the plaintiffs filed an amended complaint. First Amended Complaint, etc. (Docket No. 15). The moving defendants then renewed their respective motions. Motion to Dismiss Amended Complaint and Incorporated Memorandum of Law of Defendants Sanford J. Prince, Michael Duffy and Windham School Department (Docket No. 17); Defendant Ron Cote's Motion to Dismiss Amended Complaint, etc. (Docket No. 19). I recommend that the court grant the motions.[1]

---

[1] I treat the later filed motions as the operative motions, but note that they essentially incorporate the original motions and for that
(*continued on next page*)

1

### I. Applicable Legal Standard

Both motions invoke Fed. R. Civ. P. 12(b)(6). School Motion at 1; Cote Motion at 1. "In ruling on a motion to dismiss [under Rule 12(b)(6)], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). A defendant is entitled to dismissal for failure to state a claim only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," *Cepero-Rivera v. Fagundo*, 414 F.3d 124, 129 (1st Cir. 2005) (citation omitted); *see also Wall v. Dion*, 257 F. Supp.2d 316, 318 (D. Me. 2003).

### II. Factual Background

The amended complaint asserts the following relevant facts. The plaintiffs, Anita S. Charles and Christopher K. Gelder, are residents of the town of Windham. First Amended Complaint ¶ 1. Defendant Cote was at all relevant times the principal of Manchester School in Windham. *Id*. ¶ 2. Defendant Prince was at all relevant times the superintendent of schools for the town of Windham. *Id*. ¶ 3. Defendant Duffy was at all relevant times the chair of the Windham School Committee. *Id*. ¶ 4. It was "custom and usage" in the town of Windham for Prince to investigate matters relating to school personnel. *Id*. ¶ 5A. The Windham School Committee delegated final decision-making authority regarding all school personnel matters to Prince. *Id*. ¶ 5B.

In October 2004 a female teacher of "gifted and talented" students at Manchester School abruptly resigned. *Id*. ¶ 6. The plaintiffs and other parents believed the reason for the resignation was the mistreatment of the teacher by Cote and that their children suffered as a result. *Id*. A group of parents, including the plaintiffs, organized and voiced their concerns in the local newspaper. *Id*. ¶ 7.

---

reason will, except as specifically noted otherwise, refer and cite to the content of the original motions.

A letter to the editor identified both of the plaintiffs by name as members of this group and Charles as a leader of this group. *Id.* On or about November 16, 2004 the plaintiffs, among others, filed a formal written complaint alleging inappropriate conduct by Cote. *Id.* ¶ 8. The complaint raised questions about Cote's conduct towards teachers, parents and students and identified disturbing behavior and past incidents of misconduct, including intentionally pulling a fire alarm at the school and bullying and/or threatening teachers, parents and students. *Id.* The complaint also referred to earlier complaints made by others alleging that Cote was incompetent and had committed thefts at other schools. *Id.*

During the fall of 2004 numerous articles appeared in the Windham newspaper reporting on the allegations of improper conduct made against Cote by the parents' group. *Id.* ¶ 9. On or about November 19, 2004 the plaintiffs received an anonymous letter stating falsely that Charles was committing adultery. *Id.* ¶ 10. Cote was responsible for this letter. *Id.* Also on or about that date, a former teacher at another school where Cote had been the principal received an anonymous letter stating that her husband was having an affair with Charles. *Id.* ¶ 11. Cote was responsible for this letter. *Id.*

In November 2004 the Windham newspaper received an anonymous letter stating falsely that Charles was engaging in an adulterous relationship. *Id.* ¶ 12. Cote was responsible for this letter. *Id.* In the fall of 2004 an anonymous letter was sent to Prince at the Manchester School accusing a female teacher who had complained about Cote of misconduct and including false and defamatory remarks about Charles. *Id.* ¶ 13. This letter, for which Cote was responsible, was distributed to Duffy. *Id.* Prince, Duffy and the Windham School Committee knew or should have known that these letters were written and published by Cote in violation of the plaintiffs' federally-protected rights. *Id.* ¶ 14.

Prince responded to the November 16 complaint from the parents' group by letter dated December 28, 2004 stating that he had found no misconduct and fully supported Cote. *Id*. ¶ 15. The plaintiffs and others appealed Prince's response to the Windham School Committee on or about January 28, 2005, including in their appeal allegations of inappropriate and illegal conduct by Cote including sexual harassment of and discrimination against students and teachers. *Id*. ¶ 17. Unidentified defendants held a private hearing on the parents' appeal on or about February 15, 2005 at which they improperly went into executive session and verbally attacked Charles for reporting misconduct. *Id*. ¶ 18. The School Committee directed its hostility and accusations towards Charles even though a male was also present, accusing her of dishonesty and of defamation of Prince. *Id*.

Prince failed properly to investigate Cote or to hold him accountable for his actions and thereby condoned his behavior. *Id*. ¶ 19. Duffy and the Windham School Committee ratified Prince's actions by supporting his conclusions and decision not to discipline Cote when they knew or should have known that the plaintiff's federally-protected rights were being violated. *Id*. ¶ 20. Cote resigned on or about February 2, 2005. *Id*. ¶ 21.

On or about May 12, 2005 the plaintiffs filed with the town of Windham a notice of claim pursuant to 14 M.R.S.A. § 8107 describing tortious conduct committed by Cote and the Windham School Committee to which the defendants did not respond. *Id*. ¶¶ 22-23.

In June 2005 the town of Windham held municipal elections, including elections for its school committee for which Charles was a duly qualified candidate. *Id*. ¶¶ 24-25. Members of the Windham School Committee published false and defamatory information about the plaintiffs to members of the public, including that the plaintiffs were negligent parents who exposed their children to harmful situations and that the plaintiffs had filed a frivolous lawsuit against the town. *Id*. ¶ 26. Members of the Windham School Committee called at least three local newspapers and falsely reported that the

plaintiffs had filed a frivolous lawsuit against the town. *Id.* ¶ 27. The Windham School Committee engaged in threatening behavior to instill fear in the plaintiffs in an attempt to cause Charles to withdraw her candidacy, including removing her signs from supporters' lawns and placing signs for an incumbent member of the school committee across the plaintiffs' driveway during the night after the election. *Id.* ¶ 28. Following the election, which Charles lost by "a handful of votes," she requested the opportunity formally to inspect the ballots pursuant to 30-A M.R.S.A. § 2530-A. *Id.* ¶ 30. At the ballot inspection, a member of the Windham School Committee began shouting at the plaintiffs, acting in an agitated manner and yelling that they did not have a right to inspect the ballots and that this was a waste of taxpayer time and money. *Id.* ¶ 31.

The acts and omissions of the defendants towards the plaintiffs amount to a *de facto* policy for which the defendants are liable. *Id.* ¶ 32A. The defendants acted with actual malice, deliberate indifference and/or reckless disregard of the plaintiffs' state and federal rights. *Id.* ¶ 33.

The defendants, both personally and in their official capacities, acting under color of state law, violated the plaintiffs' rights guaranteed by the First and Fourteenth Amendments to the United States Constitution, and specifically the equal protection clause of the Fourteenth Amendment. *Id.* ¶¶ 36, 39. The Windham School Committee, the recipient of federal education funds, intentionally discriminated against the plaintiffs in violation of 20 U.S.C.A. § 1681 *et seq.* because they complained about discrimination based on sex committed by Cote. *Id.* ¶ 43.

### III. Discussion

#### A. Count I (First Amendment)

The school defendants correctly point out that there is no allegation in the original or the amended complaint to the effect that Duffy or Prince individually infringed any of the plaintiffs' free speech rights. However, the factual allegations cited by the plaintiffs in response do allege that the

5

defendants generally engaged in the actions they identify as establishing violations of the First Amendment. The plaintiffs' response does not address their First Amendment claim separately but rather asserts that the complaint "alleges an abundance of facts to support a civil rights claim against the School Defendants" and then lists certain facts alleged in both the initial and the amended complaints. Plaintiffs' Objection to Defendants Sanford J. Prince, Michael Duffy and Windham School Department['s] Motion to Dismiss, etc. ("First School Opposition") (Docket No. 10) at 3. The list of facts ends with the assertion that "[t]he actions of the School Defendants as alleged in the Complaint singly and as a whole point directly to First and Fourteenth Amendment rights violations." *Id*. However, it is far from self-evident how a "verbal[] attack[]" on Charles during "an improper executive session" of the school committee, awareness of the anonymous defamatory letters, the fact that the defendants knew or should have known that Cote "was responsible for the letters, and chose to do nothing," inadequately investigating Charles's complaints about Cote, failing to discipline Cote or to take Charles's complaints seriously, never responding to the plaintiffs' notice of claim, publishing defamatory information about the plaintiffs and engaging in "threatening behavior" during and after Charles's campaign for a seat on the school committee[2] "support a civil rights claim," *id*., based on the First Amendment.

The plaintiffs do get around to a specific discussion of the First Amendment in their opposition to the school defendants' renewed motion to dismiss. Plaintiff's [sic] Objection to Defendants Sanford J. Prince, Michael Duffy and Windham School Department['s] Motion to Dismiss Amended

---

[2] The only specific facts that can reasonably be said to constitute the alleged threatening behavior are "removing Plaintiff Charles' signs form supporters' lawns and placing political signs of the incumbent School Committee member Stuart Pennels across Plaintiffs['] driveway during the night after the election" and one unidentified member of the school committee "shouting at the Plaintiffs, acting in an agitated manner and yelling that they did not have a right to inspect the ballots and that this was a waste of time and taxpayer money." Amended Complaint ¶¶ 28, 31. It is not clear how the actions alleged to have taken place "during the night after the election" or later could have constituted "an attempt to cause Plaintiff Charles to withdraw from the election." *Id*. ¶ 28.

6

Complaint, etc. ("Second School Opposition") (Docket No. 20) at [2]-[4].[3]  In that document they assert that they have "a First Amendment right to speak freely about matters involving their children in a public school setting" and to complain to school officials "about anything they feel is detrimental to the welfare of their children." *Id*. at [2].  They apparently contend that the listed actions and inactions of the defendants as a group somehow were in retaliation for their exercise of these asserted rights. *Id*. at [2]-[3].

In order to state a claim for relief based on First Amendment retaliation, a plaintiff must allege that her speech was in fact chilled or intimidated.  *Sullivan v. Carrick*, 888 F.2d 1, 4 (1st Cir. 1989); *see also Bloomquist v. Albee*, 421 F.Supp.2d 162, 180 (D. Me. 2006).  There is no such allegation in the amended complaint, however indulgently read, let alone any "specifics offered to support such a conclusion." *Sullivan*, 888 F.2d at 4.  The moving defendants are entitled to dismissal of that portion of Count I that alleges retaliation. *Id*.

To the extent that the amended complaint may be read to state a direct claim under the First Amendment, Second School Opposition at [3], statements made by defendants pursuant to their own First Amendment rights which the plaintiffs perceive as hostile to them or their position do not constitute a First Amendment violation. *Seamons v. Snow*, 84 F.3d 1226, 1237 (10th Cir. 1996). The amended complaint does not appear to allege any direct claim other than one which would fit within the *Seamons* circumstances.

To the extent that a First Amendment claim is asserted against the Windham School Department independent of that asserted against the individual defendants, the plaintiffs have failed to allege that the alleged First Amendment violations were representative of an official policy or custom of the Windham School Committee. *See Bordanaro v. McLeod*, 871 F.2d 1151, 1155 (1st Cir. 1989).  That

---

[3] Counsel for the plaintiffs is reminded that this court's local rules require that all pages of memoranda of law be numbered at the (*continued on next page*)

it was "custom and usage in the Town of Windham for Defendant Prince to investigate matters relating to school personnel," Amended Complaint ¶ 5A, is irrelevant to any First Amendment claim against the School Committee. The allegation that "[t]he acts and omissions of the Defendants towards the Plaintiffs amount to a de facto policy for which Defendants are liable," *id*. ¶ 32A, is the type of conclusory allegation, devoid of supporting factual allegations illuminating at the very least what the alleged policy actually was, found insufficient in *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir. 1989).

The moving defendants are entitled to dismissal of Count I.

### B.  Second Claim (Equal Protection)

The school defendants contend that the complaint fails to allege that the plaintiffs have been intentionally treated differently by the school defendants from others similarly situated and that there is no rational basis for the difference, which allegations they assert are required in order to state an equal protection claim. School Motion at 6-7. Cote makes a similar argument. Cote Motion at 7-8. The plaintiffs respond, again in their opposition to the second motions, that

> other people were involved in the complaints against Defendant Cote . . . yet the School Defendants singled out the Plaintiffs among those who complained by verbally attacking Plaintiff Charles for reporting misconduct, by publishing false and defamatory statements about her to the public, and by engaging in threatening behavior designed to intimidate her into withdrawing from the School Committee election.

Second School Opposition at [4]. The first problem for the plaintiffs with this interpretation of their amended complaint is that it makes no mention of any treatment of Gelder that differed in any way from the school defendants' treatment of others, assuming that those others were similarly situated. If this were an accurate representation of the amended complaint, the school defendants would be entitled to dismissal of Gelder's equal protection claim in any event. However, the amended complaint does

---

bottom.  Local Rule 7(e).

allege that members of the School Committee published false and defamatory statements about both plaintiffs. Amended Complaint ¶ 26. I will therefore treat the plaintiffs' arguments as if they encompass both plaintiffs, as they were apparently intended to do.

Contrary to the plaintiffs' representation, the amended complaint does not allege that Charles was treated differently from other parents who were involved in complaints against Cote. It merely alleges that specific things were done to Charles, or, in one case, to both of the plaintiffs, by the defendants. Assuming *arguendo* that it is reasonable to infer from the allegations of the amended complaint that other parents were similarly situated in all relevant respects and were treated differently, the claim nonetheless founders on the rocks of the requirement that such a claim include an allegation that there was no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).[4] The plaintiffs' responses do not address this element of their claim. The school defendants are entitled to dismissal of the equal protection claim.

With respect to this claim, Cote makes arguments similar to those pressed by the school defendants. The plaintiffs respond that the complaint "clearly alleges that other people were involved in the complaints against Defendant Cote, . . . yet Defendant Cote singled out the Plaintiffs among those who complained with anonymous letters containing false and defamatory allegations." Plaintiffs' Objection to Defendant Ron Cote's Motion to Dismiss, etc. ("Cote Opposition") (Docket No. 16) at 5. It requires an extremely generous reading of the amended complaint to find any factual allegations from which it may reasonably be inferred that Cote "singled out" the plaintiffs from others similarly situated. Even with this generous reading, however, none of the relevant paragraphs of the complaint contains any allegations that any of the anonymous letters included any statements at all about Gelder. Amended Complaint ¶¶ 10-13. Cote is, at the least, entitled to dismissal of Gelder's equal protection

---

[4] This is the formulation of the "class of one" equal protection claim. *Olech*, 528 U.S. at 564. The amended complaint cannot be (*continued on next page*)

9

claim. But there is no escaping the fact that Cote is also entitled to dismissal of Charles's equal protection claim against him, for the reasons discussed above in connection with the claim against the school defendants.

### C. Third Claim (Title IX Retaliation)

"Title IX" refers to Title IX of Public Law 92-318, encoded at 20 U.S.C. § 1681. That section prohibits discrimination on the basis of sex in any education program or activity that receives federal financial assistance. 20 U.S.C. § 1681(a). Claims of retaliation against one who complains about sexual discrimination may be brought under Title IX. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 171 (2005). Traditionally, such claims involve adverse employment action alleged to have been taken against a plaintiff. *See, e.g., Nelson v. University of Me. Sys.*, 923 F. Supp. 275, 279-80 (D. Me. 1996). In the instant case, neither plaintiff is alleged to be an employee of any of the defendants. The plaintiffs contend that "but for the conduct of the School Defendants, Plaintiff Charles could have been elected to the Windham School Committee." School Opposition at 6. This is the basis on which Charles apparently presses her retaliation claim. The plaintiffs do not mention any basis for a claim by Gelder under Title IX and none is apparent from the amended complaint. Thus, without more, the school defendants are entitled to dismissal of any claim against them asserted by Gelder in the Third Claim of the amended complaint.

Defendant Cote argues that "[t]he Plaintiffs have not been subjected to adverse educational or employment action by Mr. Cote. And no case law under Title IX . . . supports the viability of a law suit on the basis of alleged adverse action to a third party employee." Cote Motion at 12. The plaintiffs' response makes clear that the only alleged adverse action at issue here with respect to Cote is "sending slanderous letters to Plaintiffs and others." Cote Opposition at 6. Cote responds that the

---

construed to allege that either of the plaintiffs is a member of a suspect class.

plaintiffs are required to allege that the retaliation itself was based on sex, which the amended complaint in this case does not do, and not just that the retaliation was based on complaints about discrimination based on sex. Defendant Ron Cote's Reply to Plaintiffs' Objection to Defendant's Motion to Dismiss, etc. (Docket No. 18) at 5-6. While I doubt that the holding in *Jackson* that a private right of action exists where a recipient of federal education funding retaliates against an individual "because he has complained about sex discrimination," 544 U.S. at 171, can reasonably be interpreted to be limited to retaliation that is also undertaken because of the complainer's gender, it is not necessary to reach that question under the circumstances present here. The amended complaint makes no attempt to draw a causal connection between Cote's alleged "sending slanderous letters to Plaintiffs and others" and any adverse impact on the plaintiffs that might come within the scope of Title IX. Any likely adverse impact from such letters cannot rationally be connected with any aspect of federally-funded education. The mere fact that such letters are alleged to have been sent by an employee of a federally-funded education program or activity does not make those letters actionable under Title IX. Cote is entitled to dismissal of the Third Claim.

      The plaintiffs have tried in a somewhat similar fashion to extend the boundaries of Title IX with their claim against the school defendants. The plaintiffs cite no authority, and I have been unable to locate any, to support their necessarily implied position that election to a seat on the Windham School Committee is equivalent to employment by that body or by the Windham School Department or the Town of Windham for purposes of Title IX. Even if the plaintiffs could prove that Charles would have been elected to the School Committee but for the alleged conduct of the school defendants, a highly doubtful proposition, those circumstances simply do not state a claim for retaliation under Title IX. Charles had no legal entitlement to any elected position, whether or not that position is related to

federally funded education. The school defendants are entitled to dismissal of the Third Claim as well.

### D. State-Law Claims

The remaining claims in the amended complaint are asserted under Maine law. Amended Complaint ¶¶ 45-52. The moving defendants ask this court to decline to exercise jurisdiction over these pendent state-law claims. School Motion at 8; Cote Motion at 15-16. The plaintiffs do not address in their replies any basis for the exercise of this court's jurisdiction should their federal claims be dismissed. First School Opposition at 7; Cote Opposition at 8.

> In the absence of any remaining federal claims, the Court must next determine whether to entertain Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3) (expressly authorizing a district court to decline the exercise of supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction"); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995) ("[a]s a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims"); *Snowden v. Millinocket Reg'l Hosp.*, 727 F. Supp. 701, 710 (D. Me. 1990) (the *Gibbs* doctrine "require[s] dismissal without action on the merits and without any exercise of discretion if all the federal claims in this suit are found to be, short of trial, deficient.").

*Bennett v. City of Biddeford*, 364 F.Supp.2d 1, 3 (D. Me. 2005). The court should decline to exercise jurisdiction over the remaining state-law claims against the moving defendants.[5]

### IV. Conclusion

For the foregoing reasons, I recommend that Count I and the Second and Third Counts of the First Amended Complaint be dismissed as to defendants Cote, Prince, Duffy and the Windham School

---

[5] None of the motions to dismiss purports to have been filed on behalf of the Town of Windham, a named defendant, but there is no indication on the docket that the Town has ever been served with process.

Committee and that this court decline to exercise jurisdiction over the remaining counts that are asserted against these defendants, dismissing those counts without prejudice.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 18th day of September, 2006.

>                         /s/ David M. Cohen
>                         David M. Cohen
>                         United States Magistrate Judge